# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JASON ROTBERGS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:10cv1423 (MRK) |
| | : | |
| JASON GUERRERA , | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Jason Rotbergs brings suit against Police Officer Jason Guerrera in his individual capacity. In his Complaint [doc. # 1], Mr. Rotbergs asserts that he was subjected to false and unreasonable warrantless arrest and seizure and malicious prosecution in violation of the Fourth Amendment and 42 U.S.C. §§ 1983, 1988. Mr. Rotbergs also alleges malicious interference with his family relationships in violation of the First Amendment, presumably based on Officer Guerrera's statements to the Connecticut Department of Children and Families ("DCF").

Officer Guerrera had probable cause and arguable probable cause to arrest Mr. Rotbergs, Mr. Rotbergs fails to establish the elements of a malicious prosecution claim, and Mr. Rotbergs abandoned his First Amendment claim during briefing on this motion. As a result, Officer Guerrera's Motion for Summary Judgment [doc. # 32] is granted in full.

## I.

The facts set forth herein are culled from the parties' Local Rule 56(a) Statements [docs. # 32-2, 33-1], affidavits, and exhibits. Because this case is currently at the summary judgment

stage, the Court presents the facts in the light most favorable to Mr. Rotbergs, the nonmoving party. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 74 (2d Cir. 2010) (per curiam). Unless otherwise indicated, all of the facts recited below are undisputed.

On July 7, 2009, at approximately 7 p.m. but while it was still daylight, Officer Guerrera was patrolling the parking lot of an apartment complex. He observed a vehicle parked, but running, in the visitor's parking lot. Mr. Rotbergs, who owned the vehicle, was in the driver's seat; Mr. Rotbergs's friend James Merritt was in the passenger seat; and Mr. Rotbergs's two-year-old son was in the back in his car seat. Mr. Rotbergs had been parked in that location for approximately five to ten minutes. Though he intended to drop Mr. Merritt off at the apartment complex, the two were still talking in the car at the time of the incident which resulted in this case. Officer Guerrera stopped his vehicle behind the parking space, to the left of Mr. Rotbergs's side door, exited his vehicle, and approached Mr. Rotbergs's vehicle to speak with the driver.

Officer Guerrera states that, as soon as Mr. Rotbergs noticed his patrol vehicle, he put his car in reverse to vacate the area, even though he had not dropped off Mr. Merritt. At his deposition, Mr. Rotbergs stated that when he saw that a police vehicle had pulled up behind him, he began to back out, because he figured that he was in the wrong place and that the police officer was looking for somebody else. Mr. Rotbergs didn't drive away, however, as he believed that his vehicle was blocked by the police cruiser. Mr. Rotbergs states that Officer Guerrera called out to ask what they were doing, that he responded through his open window that he was just dropping his friend off, and that he then rolled his window up.

Both parties agree that Mr. Rotbergs's window was rolled up as he observed Officer Guerrera approaching, that Officer Guerrera knocked on the side window, and that Mr. Rotbergs

rolled it down a few inches. According to Officer Guerrera, he detected the smell of burnt marijuana when Mr. Rotbergs rolled down his window. Mr. Rotbergs claims that this was impossible, as no one had ever smoked marijuana in the car, but notes that he had just smoked a tobacco cigarette.

Officer Guerrera asked for Mr. Rotbergs's license and registration. However, before Mr. Rotbergs could retrieve them, Officer Guerrera had Mr. Rotbergs exit the vehicle and immediately handcuffed him. Officer Guerrera also handcuffed Mr. Merritt. Officer Guerrera maintains that he handcuffed both individuals because, as the only officer on the scene, he needed to ensure his safety.

At some point, either before or after Mr. Rotbergs exited his vehicle, Officer Guerrera asked Mr. Rotbergs if he had been smoking marijuana. Officer Guerrera stated in his affidavit that Mr. Rotbergs admitted to having just smoked a bowl; Mr. Rotbergs denies having ever made such an admission.

Officer Guerrera patted Mr. Rotbergs down and found a small amount of marijuana in his pocket. Mr. Rotbergs testified at his deposition that he intended to smoke it later that day. A similar pat down of Mr. Merritt confirmed he had no weapons. Officer Guerrera asked Mr. Rotbergs if he had anything in the car, and Mr. Rotbergs told him that he "had a bowl in [his] vehicle." Rotbergs Dep. at 37. Officer Guerrera then searched the vehicle's interior, finding both Mr. Rotbergs's son and a glass pipe used for smoking marijuana. Officer Guerrera states that the search of the vehicle occurred after the pat down. Mr. Rotbergs denies this in responding to Officer Guerrera's statement of material facts, but he stated in his deposition both that the search had commenced prior to the pat-down when the Officer examined the inside compartments of the car door, *see id.* at 103-05, and that the car was searched after the pat down, *see id.* at 37-38.

3

Mr. Rotbergs maintains that he never gave Officer Guerrera permission to search his car, *see id.* at 106 ("I didn't give him permission to [search my car]. I told him that there was a bowl in my car, because he had already found what was in my pocket . . . ."). Mr. Rotbergs also states that he told Officer Guerrera about the bowl and where it was in the attempt to "make everything as easy as possible for him." *Id.* at 38.

Officer Guerrera informed Mr. Rotbergs that he was under arrest, removed the handcuffs from Mr. Merritt, and informed Mr. Merritt that he was free to leave. At some point, Officer Guerrera had called for backup and backup officers arrived. After making arrangements for Mr. Rotbergs's wife to pick up their son, who remained at the scene with backup officers, Officer Guerrera transported Mr. Rotbergs to the East Hartford Police Department, where he was booked and processed on charges of illegal possession of marijuana in violation of Connecticut General Statutes § 21(a)-279(c); possession of drug paraphernalia in violation of Connecticut General Statutes § 21a-267; and risk of injury in violation of Connecticut General Statutes § 53-21.

That evening, Officer Guerrera called the DCF hotline. He reported to Gail Mancini his suspicion that Mr. Rotbergs had been smoking marijuana in a vehicle occupied by his child. He also completed a Report of Suspected Child Abuse/Neglect ("Form 136"), as is required of mandated reporters within forty-eight hours of making an oral report to the DCF hotline.

Officer Guerrera states that Mr. Rotbergs subsequently admitted to a DCF investigator that he had marijuana and a bowl in his possession at the time of his arrest and that he had smoked marijuana on July 7, 2009 prior to his arrest. Mr. Rotbergs denies making either of these admissions and maintains that almost every sentence in the DCF report is false.

Within two weeks of his arrest, Mr. Rotbergs submitted a urine sample for drug testing as part of the DCF's investigation; the urine sample tested positive for marijuana.

4

On July 22, 2009, the charges against Mr. Rotbergs were *nolled*; on August 23, 2010, all of the charges were dismissed or erased. Mr. Rotbergs claims that the charges were *nolled* because he was innocent, but he provides no evidence to support this claim. Officer Guerrera states in his deposition that he did not learn of the outcome of the criminal charges until he reviewed the complaint in this lawsuit and that he has no knowledge of why the charges were *nolled*. The parties agree that the July 7, 2009 incident was the first and only encounter between them.

## II.

This Court applies a familiar standard when resolving a motion for summary judgment. Summary judgment is appropriate only when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" submitted to the Court "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Civ. P. 56(a). A "material fact" is one whose resolution will affect the ultimate determination of the case. *See Anderson*, 477 U.S. at 248. A factual dispute is "genuine" when the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *See id.*; *see also Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006).

In a motion for summary judgment, the burden is initially on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (quotation marks and citations omitted). In evaluating the moving party's evidence, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences

in its favor." *Sologub v. City of N.Y.*, 202 F.3d 175, 178 (2d Cir. 2000) (quotation marks omitted). If the moving party meets this burden, the party against whom summary judgment is sought "must come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quotation marks omitted) (emphasis in original). The plaintiff may not prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts," *id.* at 587, as "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiff],'" *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004) (quoting *Anderson,* 477 U.S. at 252). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted). Merely verifying—or contesting—the allegations of the complaint in an affidavit is insufficient to oppose a motion for summary judgment. *See Zigmund v. Foster*, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (citing cases).

While the parties dispute numerous minor or collateral facts, the Court nonetheless concludes that summary judgment is appropriate because there are no genuine issues of material fact. *See Jeffreys v. City of N.Y.*, 426 F.3d 549, 554-55 (2d Cir. 2005).

### III.

To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff is required to show that "the defendant intentionally confined him without his consent and without justification." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quotation marks omitted). A false arrest claim will fail should the defendant demonstrate that he or she had probable cause to arrest the plaintiff. *See, e.g.*, *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of

probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983.").

As the Second Circuit recently clarified, the probable cause inquiry

is an objective one that focuses on the facts available to the arresting officer at the time of the arrest. Probable cause exists when, based on the totality of circumstances, the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.

*Finigan v. Marshall,* 574 F.3d 57, 61-62 (2d Cir. 2009) (citations and quotation marks omitted); *see also Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) (noting that probable cause requires more than bare suspicion, but that it exists where a reasonable person would believe that "an offense has been or is being committed"). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). "[O]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Finigan*, 574 F.3d at 63 (quotation marks omitted). Because the Court finds that there are no genuine disputes of material facts, the existence of probable cause is properly decided as a matter of law. *See Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007).

Neither party contests that, if Officer Guerrera did smell burnt marijuana, he had probable cause to question, pat down, and ultimately arrest Mr. Rotbergs. *See Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with

respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."); *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) ("[A]n arrest is not unlawful so long as the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances sufficient to provide probable cause to believe that the person arrested has committed any crime . . . .").

Mr. Rotbergs hopes, however, that the Court views this case as requiring a credibility assessment as to who is lying: Officer Guerrera when he says he smelled burnt marijuana; or Mr. Rotbergs when he says that this was impossible, as no one had ever smoked marijuana in the car. Mr. Rotbergs, however, offers no evidence that marijuana had never been smoked in his car. *Cf. Zigmund*, 106 F. Supp. 2d at 356. In his Response, Mr. Rotbergs argues—without citing any facts in the record—that "there was no marijuana ever smoked in that car." Pl.'s Resp. [doc. # 33] at 2. In his response to Officer Guerrera's statement of facts, Mr. Rotbergs similarly claims that "There had not been any smoking of marijuana in the car at any time." Pl.'s Local Rule 56(a) Statement [doc. # 33-1] ¶ 10 (citing Rotbergs Dep. at 21, 26, 29, 35, 108, 138). However, after reviewing the citations, the Court finds only testimony that marijuana had not been smoked in the car *that day*—not that marijuana had *never* been smoked in the car. *See* Rotbergs Dep. at 21 (mentioning having smoked a cigarette); *id.* at 26 ("'First, he asked me if I was smoking weed. I said, no, sir, and then that it was it.'"); *id.* at 29 ("'And you told him that you hadn't been smoking marijuana?' 'Yes.'"); *id.* at 35 ("'Had you smoked marijuana before you encountered Officer Guerrera on the day in question?' 'No.'"); *id.* at 108 ("'I wasn't smoking and I didn't smoke, and I didn't tell him that I did smoke.'"); *id.* ¶ 138 (stating that Mr. Rotbergs had not smoked on the day he was arrested or told the DCF Investigator that he had).

8

Furthermore, the parties' claims are not mutually exclusive. Even if no one had ever smoked marijuana in Mr. Rotbergs's car, Officer Guerrera could have still smelled marijuana. Mr. Rotbergs admits that he had had marijuana in his pocket and a bowl used for smoking marijuana in his car.[1] When asked at his deposition whether he could smell the marijuana he had on his person, Mr. Rotbergs said only that he couldn't because he was a cigarette smoker—not that there was no such smell. The marijuana he had in his pocket was wrapped in plastic, not sealed in a baggie, which may have meant it was easier to smell. Furthermore, Mr. Rotbergs may regularly smoke marijuana—he stated that he had previously smoked marijuana, *see id.* at 118, he stated that he intended to smoke the marijuana found in his pocket later in the day, *see id.* at 35, and he later failed a drug test for marijuana. Even he hadn't smoked marijuana in his car that day, as a result of his prior use, either Mr. Rotbergs or his car may have smelled of marijuana. Because Mr. Rotbergs has offered no evidence that he or his car did not smell of burnt marijuana, regardless of whether marijuana had been smoked in his car that day, no reasonable juror could find in his favor on the probable cause question.

Finally, even if the Court was in error in concluding that probable cause existed to arrest Mr. Rotbergs, a reasonable juror would find that Officer Guerrera had "arguable probable cause" to arrest him. Even if the "facts supporting probable cause to arrest are ultimately found not to have existed," an officer may still be entitled to qualified immunity on the basis of "'arguable probable cause,' which requires that he or she show that it was objectively reasonable to believe that probable cause existed or that officers of reasonable competence could disagree on whether the probable cause test was met." *Finigan*, 574 F.3d at 61 (quotation marks omitted).

---

[1] Mr. Rotbergs argues in his responsive briefing that the bowl had never been used before, but there is no evidence in the record to support this claim. *Cf. Zigmund*, 106 F. Supp. 2d at 356.

Mr. Rotbergs's counsel maintained at oral argument that Officer Guerrera could not have smelled marijuana and that it was not suspicious that Mr. Rotbergs attempted to leave and then refused to roll down his window more than a few inches when Officer Guerrera approached the car (because it was summer and people do not roll down their windows when using the air conditioning). The Court disagrees. Based on Mr. Rotbergs's conduct, which might be interpreted as suspicious, and the fact that Officer Guerrera believed he smelled marijuana, a reasonable trier of fact would find that "it was objectively reasonable to believe that probable cause existed" to arrest Mr. Rotbergs, and Officer Guerrera is therefore entitled to qualified immunity from Mr. Rotbergs's false arrest claim. *Id.* at 61 (quotation marks omitted). Accordingly, Officer Guerrera's motion for summary judgment should be granted with regard to the false arrest claim.

## IV.

To prevail on a § 1983 claim for malicious prosecution, Mr. Rotbergs must both show a violation of his Fourth Amendment rights and establish the elements of malicious prosecution claims under state law. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). To establish a malicious prosecution claim under Connecticut law, Mr. Rotbergs must prove that Officer Guerrera initiated or continued criminal proceedings against Mr. Rotbergs, that the criminal proceeding terminated in Mr. Rotbergs's favor, that Officer Guerrera acted without probable cause, and that Officer Guerrera acted with malice. *See McHale v. W.B.S. Corp.*, 446 A.2d 815, 817 (Conn. 1982).

First, there is no evidence that Officer Guerrera initiated or procured criminal proceedings against Mr. Rotbergs. As this Court has had cause to observe before, "'[a]bsent a claim that the officers played more of an essential or influential role in seeking or procuring the

indictment, [plaintiff's] bare-bones assertions against them are insufficient to state a claim for malicious prosecution.'" *Simpson v. Denardo*, No. 3:02CV1471(MRK), 2004 WL 1737444, at *9 (D. Conn. July. 29, 2004) (quoting *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 901 (7th Cir. 2001)) (original alterations omitted). Here, Mr. Rotbergs offers no evidence, aside from unsupported assertions, that Officer Guerrera "exerted pressure on the prosecutors, submitted knowing misstatements to them or concealed evidence from them." *Kennedy v. Chamberland*, No. 3:07-CV-214 (RNC), 2010 WL 1286789, at *6 (D. Conn. Mar. 30, 2010) (citing *Simpson*, 2004 WL 1737444, at *9). Given the dearth of evidence on this point, a reasonable juror could not find that Mr. Rotbergs satisfies the first element.

Mr. Rotbergs must also demonstrate that the criminal proceedings terminated in his favor. Under Connecticut law, a *nolle prosequi* "is a 'unilateral act by a prosecutor, which ends the pending proceedings without an acquittal and without placing the defendant in jeopardy.'" *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (quoting *Cislo v. City of Shelton*, 692 A.2d 1255, 1260 n.9 (Conn. 1997)). Connecticut has adopted a liberal interpretation of the favorable termination requirement in evaluating claims of malicious prosecution. *See id.* at 420-21 (citing *See v. Gosselin*, 133 Conn. 158 (1946)). It is not necessary that the plaintiff prove he was acquitted of the charges; rather, it is sufficient for him to show that the prosecution terminated under circumstances showing an abandonment of the prosecution that was not based on an arrangement with defendants. *See id.* at 421; *see also Russo v. City of Hartford*, 184 F. Supp. 2d 169, 186 (D. Conn. 2002) (observing that the Connecticut Supreme Court considered "the burden to establish the termination prong a minimal one, with little emphasis on whether the actual termination was favorable to the plaintiff").

In the absence of evidence from either party as to why the charges against Mr. Rotbergs were *nolled*, the Court assumes for the purpose of this motion that Mr. Rotbergs has demonstrated that the criminal proceedings terminated in his favor. *See, e.g.*, *Anderson*, 477 U.S. at 255; *DeFabio*, 623 F.3d at 74.

As discussed above, probable cause existed at the time Officer Guerrera arrested Mr. Rotbergs, defeating his claim for false arrest. However, probable cause to arrest is distinct from the probable cause to believe that an individual "could be successfully prosecuted. Only the latter kind of probable cause is at issue with respect to the [third element of a] malicious prosecution claim." *Posr v. Court Officer Shield 207*, 180 F.3d 409, 417 (2d Cir. 1999). As Mr. Rotbergs offers no evidence that there was no probable cause for initiating prosecution, a reasonable juror would find that he failed to satisfy this element.

Finally, Mr. Rotbergs alleges that Officer Guerrera acted with malice, which the Second Circuit defines as a "wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quotation marks omitted). However, Mr. Rotbergs offers only conclusory allegations that Officer Guerrera prepared the police report maliciously and knowingly made false statements maliciously for the purpose of inflicting injury on Mr. Rotbergs. Additionally, the parties agree that the incident of July 7, 2009 was the first and only encounter between them, and that they were previously unknown to each other. On the evidence in the record, a reasonable juror could not find that Mr. Rotbergs had adequately established malice.

Mr. Rotbergs is not able to establish three of the four required elements for a malicious prosecution claim. As the lack of any one element would have been fatal, Officer Guerrera's motion for summary judgment is granted with regard to the malicious prosecution claim.

**V.**

In his responsive briefing to Officer Guerrera's motion for summary judgment, Mr. Rotbergs raises for the first time an unreasonable search and seizure claim. He has never sought to amend his complaint for this purpose. Officer Guerrera therefore counters that Mr. Rotbergs should not be permitted to raise the claim simply to evade summary judgment. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (noting that a party may not raise a new claim in response to a dispositive motion); *Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001) (summary order) ("[I]t is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion."); *Coger v. Connecticut*, 309 F. Supp. 2d 274, 279 (D. Conn. 2004) (same).

At oral argument, Mr. Rotbergs's counsel initially maintained that the complaint could be read to state an unreasonable search and seizure claim insofar as it alleged unreasonable arrest, but when pressed she conceded that the complaint did not actually give notice of a separate unreasonable search and seizure claim. Accordingly, the Court need not address this new claim.

Even if the Court were to read the complaint as stating an unreasonable search and seizure claim, it would not be supported by the alleged facts. Officer Guerrera did not seize Mr. Rotbergs when he approached his car. *See, e.g., Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, . . . [or] by putting questions to him . . . ." (quotation marks omitted)). Even if Officer Guerrera did block Mr. Rotbergs's exit with his car, such a blockage is not sufficient to constitute a Fourth Amendment seizure. *See United States v. Baldwin*, No. CR. 3:97CR188 (AHN), 1998 WL 563851, at *3 (D. Conn. 1998) ("[E]ven if [the plaintiff's] car was blocked in front and in the

13

rear, that fact, in isolation, is insufficient to render the encounter a seizure in light of the totality of the circumstances which indicate that the officers' conduct was not restraining or coercive." (citing *United States v. Kim*, 25 F.3d 1426, 1431 (9th Cir.))). After smelling marijuana, Officer Guerrera had probable cause to ask Mr. Rotbergs to exit the vehicle and handcuff him. *See, e.g.*, *Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000) (noting that, once a *Terry* stop is authorized, "passengers and drivers have no Fourth Amendment interest in not being ordered out of the stopped vehicle" (citing *Maryland v. Wilson*, 519 U.S. 408 (1997)); *United States v. Vargas*, 369 F.3d 98, 102 (2d Cir. 2004) (finding that using handcuffs is not an arrest when it is "a reasonable response to legitimate safety concerns" (quotation marks omitted)). Finally, once he discovered the marijuana and bowl, Officer Guerrera had probable cause to arrest Mr. Rotbergs. *See Townes v. City of N.Y.*, 176 F.3d 138, 149 (2d Cir. 1999) (noting that, even if there was no probable cause for a stop or search, probable cause to arrest existed upon discovery of handguns in part because "the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant").

## VI.

Officer Guerra argues that, because Mr. Rotbergs did not address Officer Guerrera's First Amendment arguments in his responsive brief, they should be deemed abandoned. *See, e.g.*, *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) (finding that issues not argued in briefs are considered waived); *Rose v. Panolam Indus. Int'l, Inc.*, 301 F. Supp. 2d 239, 247 (D. Conn. 2004) (same). The Court agrees.

## VII.

For the reasons described above, Officer Guerrera's Motion for Summary Judgment [doc. # 32] is GRANTED. **The Clerk is directed to enter judgment and close this case.**

IT IS SO ORDERED.


/s/    Mark R. Kravitz_____
United States District Judge


Dated at New Haven, Connecticut: April 11, 2012.